## FRYER v. AUSTILL.

1. An execution issued against a principal and security, and a part of the money was by the sheriff made by levy and sale of the principal's effects, but he returned it "no money made," and an alias issued against the security for the whole debt. The sheriff having absconded, it was held that in Equity, the security was entitled to relief, and that the Court had jurisdiction to enjoin for the amount made by the sale.
2. *Quære.*—Can a Common Law Court, in such case, afford relief?

MARTIN FRYER, as administrator of John Fryer, deceased, filed his bill in equity in Monroe Circuit Court, in August, 1824, against Jeremiah Austill, as surviving partner of the firm of Files and Austill, and against John Yancy, former sheriff of Monroe county.

The bill charged that an execution issued from Monroe Circuit Court, in favor of Austill, as survivor, against one Myles, and against John Fryer, for $336, said John Fryer being the security of Myles in a writ of error bond. That this execution was levied by Yancy, then sheriff of Monroe, on property of Myles, the principal, which he held, for $136. That he gave no account of this levy and sale, but returned the execution endorsed "no money made;" that after this, Myles died insolvent, and John Fryer died; and that an alias execution had been since issued, and was in the hands of the sheriff of Monroe county, against the estate of John Fryer, for the whole amount of the debt. That Yancy had left the State, so that the complainant could not obtain a remedy at law, by giving

him notice of a motion in said Court. The complainant averred a readiness to pay so much of said execution as had not been satisfied, being about $200; and prayed that the $136, might be credited to him, &c.; and also for an injunction to stay the collection of that amount, and for general relief. An injunction was granted by Judge Crenshaw, in September 1824, restraining the collection of the $136, for one month only, to give the complainant an opportunity of serving a notice on one of the defendants, who resided in the State.

At October term, 1824, Austill demurred to the bill, for want of equity; and at October term 1826, a decree was rendered, sustaining the demurrer, and dismissing the bill with costs, on the ground that the Court of Law could have caused satisfaction to be entered for the $136, collected.

Fryer, the complainant, in this Court, assigns for error, that the demurrer was wrongfully sustained.

BAGBY and LYON, for the appellant.

HITCHCOCK, for the appellee.

LIPSCOMB, C. J. delivered the opinion of a majority of the Court. The decree of the Circuit Chancellor was predicated on the ground that he supposed the relief was ample and sufficient at common law, and if this predicate is correct, there is no doubt but his conclusion was also correct. But what is that adequate and complete remedy? Before a rule could have been served on the old sheriff, to shew cause why satisfaction should not be entered, *pro-tanto,* the complainant would have been compelled by the second execution to pay the money. Again; satisfaction could not have been entered on the ex-parte shewing of the complainant. Would a *supersedeas* have afforded a remedy? A *supersedeas* is a common law writ, and if the case was such as would in any aspect have supported such a writ, its effects would have been to stop the execution entirely, and by so doing, an injustice would have been done to the plaintiff in the execution. A *supersedeas* could not have partially destroyed the effect of the execution, it would have operated as an entire bar or not at all. But it seems to me that it was not a ground for a *supersedeas*; the proceedings all had the appearance of fairness, and did not shew that the execution had improvidently issued A majority of the Court are of opinion that Chancery alone could

afford relief, and that there was error in sustaining the demurrer and dismissing the bill, and that therefore the decree should be reversed and the cause remanded, with leave to answer.

By JUDGE WHITE.   The only question in the present case is, whether the complainant could not have had ample redress at law.   If he could, the decree of the Chancellor below, dismissing his bill was correct, and should be affirmed.   He complains that the one hundred and thirty-six dollars enjoined had been made out of John E. Myles, for whom his intestate was security in a writ of error bond, and against whom and his said intestate, judgment was affirmed; but that the sheriff returned the execution "no money made," absconded, and a second execution issued against the estate of his intestate in his hands, for the whole amount of said judgment, Myles having in the mean time died insolvent.   In the case of *Lansing v Eddy,* <sup>a</sup> it is determined, "that an injunction will not be granted to stay a sale under execution on the ground that the judgment has been fully paid and satisfied; for the party has a prompt and adequate remedy at law."   These are the words of the marginal note.   In the body of the case, <sup>b</sup> it is said, that this remedy is by order of the Judge; what kind of order this is does not appear, except that it will stay a second sale, and afford ample redress. I should however presume, from an analogous practice, which I will presently shew, prevails in the English Courts, that it must be in the nature of a *supersedeas*, and having satisfaction entered of record.   Neither can it be supposed that this practice grows out of any peculiar provision of the statutes of New York, as this is not intimated in the cases, and a similar mode of redress obtains in others Courts of Common Law jurisdiction; and if we were to admit as contended for, that a *supersedeas* is entire, and cannot apply to a part only of an execution, still the present case would not be distinguished from the one cited, because the complainant, by paying the part of the judgment which had not been previously made out of his principal, and which he in his bill states he is ready to pay, might have superseded the whole execution.   In Blackstone's Commentaries, <sup>c</sup> it is laid down, that if after judgment a defendant has obtained a general release, or paid the debt, and satisfaction is not entered of record, the ancient method of redress was by writ of *audita querela*, which

*a* 1 John. Chi. R. 49.

*b* page 51.

*c* Vol. 3, p.406.

was in the nature of an equitable proceeding. It was a common law process, though in the nature of a bill in equity. Under this proceeding, an inquiry was had by the Court, says Blackstone, into the fact which constituted the parties right to redress who sued out the process. If this fact was a payment, upon this appearing, it was entered of record, for the very object of the inquiry under this ancient writ in such a case, was to have the payment entered of record. This was beneficial to the party, and that which he had a right to demand, that he might have perpetual evidence of his discharge from the judgment. But in the same place, of the same book, it is said that "the indulgence now shewn by the Courts in granting a summary relief upon motion, in cases of such evident oppression, has almost rendered useless the writ of *audita querela*, and driven it quite out of practice. This being the case, it is fair to presume the remedy by motion now allowed, is substantially of the same nature, equally, nay, more extensively remedial than that formerely given by the writ of *audita querela*. But this writ, says Blackstone, was very remedial, hence the remedy by motion must be so likewise, under this writ too, facts were inquired into by the Court, and a payment, when shewn to be made, was ordered to be put on the record. So also it may be on motion, or the substituted remedy would not ensure the same benficial ends as that which it has superseded. It is observable that though this author, in speaking of the payment to be inquired into, mentions a payment to plaintiff, yet he does not seem to design to distinguish between such, and those made to the sheriff. Indeed, I cannot, as it relates to this question, perceive any difference between them. A payment to the sheriff, is a payment to the party, so far at least as it operates to the discharge of the defendant. Besides, the sheriff is the ministerial officer of the Court, and is commanded by its process, not only to make the money, but to make a true return of what he has done. This is not merely for the benefit of the plaintiff, but for the safety of defendant; for, as already shewn, he has a right to have record evidence of his discharge from the judgment, when he pays it. Can it then be possible, in this view of the case, that a court of common law is so destitute of power to effect its own purposes, and control its own officers, as to force suitors into Chancery to prevent oppression from the false and fradulent conduct of such officers, done too, if not in

contempt of, at least contrary to its own mandate? I cannot believe it. It has already been seen, that they have the power to inquire into the fact of payment, on motion in open court, and if so, they must have the incidental power to supersede an execution in vacation, until the sitting of court. This is not only apparent from the case cited from Johnson, as a common law principle, but as I conceive from the provisions of our own statute. In the Laws of Alabama, page 319, this statute will be found; its words are "That the Judges of the Circuit Courts respectively, shall have power and authority in vacation, to supersede any execution, when it shall satisfactorily appear to them or any of them, that the same shall have improperly issued from the clerks's office of any of the Circuit Courts of this State." A *supersedeas* is a remedial writ, and if so, it cannot be conceived that this statute was intended to restrict its beneficial operation. Then I should say, that the execution in the present case according to the true spirit of this statute, issued improperly; and that upon that fact appearing, on petition verified by affidavit, to a Circuit Judge, and the complainant paying what he admits to be due, such Judge would be bound to supersede the execution till Court; at which time he might, as appears by the books already referred to, ascertain whether payment was made, and if made, order satisfaction to be entered of record. This would be a more expeditious, less expensive, and in almost every conceivable case, an equally efficient remedy with a resort to equity. Take the case before us, as it appears to be, for an extreme one: the sheriff is runaway; the plaintiff in execution knows nothing about the payment; how then is the complainant to obtain better proof in equity than at law? Nor are these principles unsanctioned by practice in our own Courts, or those of States immediately about us. In Tennessee, where there has been a wrong taxation of costs, it is usual to supersede the execution, and correct such taxation by motion in open Court. A similar practice in like cases has obtained with the Circuit Courts in the northern end of this State. Many can bear witness to the convenience of such a remedy, whilst none as far as I know, have there questioned its legality. Suppose A. were to sue B. and was to summon twenty witnesses, but capriciously to discharge all but two, without examining them. Would the defendant, though he might lose the suit, be liable to pay the costs of their attendance? Would they not have a

right to prove that attendance, and could the clerk do otherwise than tax such attendance in the bill of costs? This must be admitted. If in such a case, which is not unusual, the defendant should not find out this imposition before the Court adjourned, could he not obtain redress? He certainly could. But he should not be driven to a Court of Equity. Common Law Courts have a right, at any time before the money is paid over by the sheriff, to rectify a taxation of costs. This is reasonable and decided to be correct, as represented in 1. Tennessee Reports. But this practice pre-supposes the existence of powers in Courts of Common Law, which it is obvious would have remedied the injury of the plaintiff in the present case. He then had ample redress without a resort to Chancery, and the decree being founded on this principle should be affirmed.

By JUDGE COLLIER. I concur in the opinion pronounced by the Chief Justice, yet dissent from the suggestion made in that opinion, that an execution cannot be superseded in part and continued in force for the residue. I believe the reverse to be the law. Judges CRENSHAW, (who did not sit in this cause) and TAYLOR, concur with me.

Decree reversed and cause remanded.